# 22-1854

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA *ex rel.* RALPH BILLINGTON,
MICHAL ACEVES, and SHARON DORMAN,

Plaintiffs-Relators/Appellants,

v.

HCL TECHNOLOGIES LTD. AND HCL AMERICA, INC.,

Defendants/Appellees.

Appeal from the United States District Court
for the District of Connecticut, Case No. 3:19-cv-01185
Hon. Sarah A. L. Merriam

**BRIEF OF DEFENDANTS/APPELLEES**

David L. Schenberg
OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.
7700 Bonhomme Avenue, Ste. 650
St. Louis, Missouri 63105
314.802.3935
*Attorneys for Defendants / Appellees*

## <u>Corporate Disclosure Statement</u>

HCL America Inc. is owned by HCL Bermuda LTD, which in turn is owned by HCL Technologies Ltd., a publicly traded company in India. No publicly held corporation owns 10% or more of the stock of HCL Technologies, Ltd.

# Table of Contents

**Corporate Disclosure Statement** ...........................................................ii

**Table of Authorities** ..............................................................iv

**Statement of the Issues** ...............................................................1

**Statement of the Case** ...............................................................3

**Summary of the Argument** ...............................................................6

**Argument** ...............................................................8

    Standard of Review ...............................................................8

    Pleading Standard ...............................................................8

    I.    Plaintiffs fail to state a claim regarding taxes on H-1B wages ... 11

    II.    Plaintiffs fail to state a claim regarding fees for visas never sought ............................................................... 47

**Certificate of Compliance** ...............................................................65

**Certificate of Service** ...............................................................66

# Table of Authorities

**Page(s)**

**Cases**

*State ex rel. American Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.,*
592 F. Supp.3d 183 (S.D.N.Y. 2022) ............................................ 23, 43

*American Textile Mfrs. Inst., Inc. v. The Limited, Inc.,*
190 F.3d 729 (6th Cir. 1999) ............................................ 37, 39, 41, 60

*United States ex rel. Bahrani v. Conagra, Inc.,*
465 F.3d 1189 (10th Cir. 2006) ...................................................... 56, 57

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC,*
878 F.3d 1224 (10th Cir. 2017) ................................................... *passim*

*Bd. of Govs. of Fed. Reserve Sys. v. Dimension Fin. Corp.,*
106 S.Ct. 681 (1986) ...................................................................... 16

*Bell Atlantic Corp. v. Twombly,*
127 S.Ct. 1955 (2007) ...................................................................... 8, 9

*Canen v. Wells Fargo Bank, N.A.,*
188 F. Supp.3d 164 (D.D.C. 2015) ...................................................... 24

*Carter v. G & S Food Shop,*
2013 WL 6421833 (E.D. Mich. Oct. 10, 2013) .................................... 24

*Carter v. Subway Store #6319,*
2012 WL 666838 (E.D Mich. Feb. 29, 2012) ...................................... 25

*United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response,*
865 F.3d 71 (2d Cir. 2017) ...................................................... 29, 44, 45

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.,*
839 F.3d 242 (3d Cir. 2016) ............................................ 40, 55, 58, 59

*United States ex rel. Foreman v. AECOM,*
    19 F.4th 85 (2d Cir. 2021)..................................................... 9, 11, 22, 34

*Franchitti v. Cognizant Tech. Sol.,*
    2022 WL 605745 (March 1, 2022).......................................58

*Franchitti v. Cognizant Tech. Sol.,*
    555 F.Supp.3d 63 (D.N.J. 2021) ................................... *passim*

*United States ex rel. Gelbman v. City of New York,*
    790 F.App'x 244 ........................................................................ 29

*Greene v. I.R.S.,*
    2008 WL 5378120 (N.D.N.Y. Dec. 23, 2008), *aff'd*, 348
    F.App'x 625 (2d Cir. 2009)........................................... 23, 44

*United States ex rel. Hirt v. Walgreen Co.,*
    846 F.3d 879 (6th Cir. 2017).............................................27

*United States ex rel. Huangyan v. Nature's Farm Prods, Inc.,*
    370 F. Supp.2d 993 (N.D. Cal. 2005)................................ 46

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.,*
    874 F.3d 905 (6th Cir. 2017)................................... 13, 39, 48

*Iqbal v. Ashcroft,*
    129 S.Ct. 1937 (2009)................................................ 8, 9, 30

*United States ex rel. Ladas v. Exelis, Inc.,*
    824 F.3d 16 (2d Cir. 2016) ........................................... 9, 10

*Lesnik v. Eisenman SE,*
    374 F. Supp.3d 923 (N.D. Cal. 2019)......................... *passim*

*Lesnik v. Eisenmann SE,*
    2018 WL 4700342 (N.D. Cal. Oct. 1, 2018) .......................24

*United States ex rel. Lissack v. Sakura Global Capital Mkts.,
    Inc.,*
    377 F.3d 145 (2d Cir. 2004) ....................................... *passim*

*Mandala v. NTT Data, Inc.*,
 975 F.3d 202 (2d Cir. 2020) .......................................... 8, 45

*United States ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*,
 398 F.App'x 233 (9th Cir. 2010).................................. 13, 48

*United States ex rel. Matheny v. Medco Health Solutions, Inc.*,
 671 F.3d 1217 (11th Cir. 2012) ............................... 13, 34, 48

*United States ex rel. Maur v. Hage-Korban*,
 2020 WL 912753 (W.D. Tenn. Feb. 25, 2020).................... 39

*Olson v. Fairview Health Servs. of Minn.*,
 831 F.3d 1063 (2016).................................................... 39

*United States ex rel. Ormsby v. Sutter Health*,
 444 F. Supp.3d 1010 (N.D. Cal. Mar. 16, 2020) ................ 44

*United States ex rel. Petras v. Simparel, Inc.*,
 857 F.3d 497 (3d Cir. 2017) ........................... 13, 16, 34, 48

*United States ex rel. Polansky v. Pfizer, Inc.*,
 822 F.3d 613 (2d Cir. 2016) .......................................... 28

*In re Qmect, Inc.*,
 368 B.R. 882 (N.D. Cal. 2007)........................................ 17

*United States ex rel. Schaengold v. Mem'l. Health, Inc.*,
 2014 WL 6908856 (S.D. Ga. Dec. 8, 2014)...................... 41

*United States ex rel. Sibley v. Univ. of Chicago Med. Ctr.*,
 44 F.4th 646 (7th Cir. 2022) ......................................... 27

*United States ex rel. Simoneaux v. E.I. DuPont De Nemours & Co.*,
 843 F.3d 1033 (5th Cir. 2016)................................. *passim*

*United States ex rel. Takeda Pharm. N. Am., Inc.*, 707 F.3d
 451 (4th Cir. 2013) ...................................................... 27

*United States v. Bourseau,*
531 F.3d 1159 (9th Cir. 2008) ............................................................. 60

*United States v. Complete Fitness Rehab., Inc.,*
2016 WL 5476277 (E.D. Mich. Sept. 29, 2016)................................. 39

*United States v. Epskamp,*
832 F.3d 154 (2d Cir. 2016) ............................................................... 15

*United States v. Merck-Medco Managed Care, L.L.C.,*
336 F. Supp.2d 430 (E.D. Pa. 2004)................................................... 45

*United States v. Missouri Pac. R. Co.,*
49 S.Ct. 133 (1929)............................................................................. 15

*United States v. Morgan,*
380 F.3d 698 (2d Cir. 2004) ............................................................... 45

*United States v. Pemco Aeroplex, Inc.,*
195 F.3d 1234 (11th Cir. 1999)..................................................... 42, 58

*United States v. Q Int'l. Courier, Inc.,*
131 F.3d 770 (8th Cir. 1997)......................................................... 37, 39

*Universal Health Servs., Inc. v. United States,*
136 S.Ct. 1989 (2016)......................................................................... 18

*In re Victory Entertainment, Inc.,*
2022 WL 17343490 (C.D. Cal. Nov. 30, 2022) ................................. 17

*W. Va. Univ. Hosps., Inc. v. Casey,*
111 S.Ct. 1138 (1991)......................................................................... 16

**Statutes**

18 U.S.C. § 1546 ....................................................................................... 51

26 U.S.C. § 3111 ................................................................................. 17, 22

26 U.S.C. § 3301 ................................................................................. 17, 22

26 U.S.C. § 7401 ................................................................................. 21, 22

29 U.S.C. § 206 ....................................................................... 19

29 U.S.C. § 207 ....................................................................... 19

31 U.S.C. § 3729 ............................................................... *passim*

31 U.S.C. § 3730 ....................................................................... 21

**Other Authorities**

8 C.F.R. §106.2 ...................................................................... 49

20 C.F.R. §655.731(a) ........................................................... 26

20 C.F.R. § 655.737 ............................................................... 26

26 C.F.R. § 601.401 .......................................................... 16, 22

155 Cong. Rec. S 45639 (daily ed. Apr. 22, 2009) ................... 15

86 FR 22835 (April 30, 2021) ................................................ 19

F.R.A.P. 30(a)(2) ...................................................................... 3

Fed. R. Civ. P. 12(b)(6) ........................................................... 8

On the Judiciary, app. at 3 (April 1, 2009), <
    https://www.justice.gov/sites/default/files/ola/legacy/2009/
    06/03/040109-s386-fraud-enforcement-recovery-act.pdf>................. 38

S. 386, 111th Cong., §4(b)(3) ................................................ 14

S. Rep. No. 111-10 ........................................................... 36, 38

## Statement of the Issues

I.    Whether this Court should affirm the district court's order dismissing Plaintiffs' tax-based reverse-False Claims Act theory, when:

    1.    A reverse-FCA claim requires there be an obligation to pay the government the money at issue that exists at the time of the alleged improper conduct;

    2.    Plaintiffs' theory is that HCL failed to pay employment taxes on wages they say HCL should have paid, but did not pay;

    3.    The only obligation to pay employment taxes arises from the Internal Revenue Code, which only requires that such taxes be paid on wages actually paid;

    4.    Because Plaintiffs' claim of an obligation to pay arises, if at all from the Internal Revenue Code, and seeks as relief the recovery of taxes, the claim is also precluded by the FCA's Tax Bar; and

    5.    In any event, Plaintiffs failed to plead any knowing underpayment of wages as required by Rules 8 and 9?

II.    Whether this Court should affirm the district court's order dismissing Plaintiffs' visa fee-based reverse-False Claims Act theory, when:

1.    A reverse-FCA claim requires there be an obligation to pay the government the money at issue that exists at the time of the alleged improper conduct;

2.    Plaintiffs' theory is that HCL failed to pay fees for H-1B visas it should have applied for, but did not apply for;

3.    The only obligation to pay H-1B visa fees arises from the immigration regulations, which only require that such fees be paid for H-1B visas actually applied for; and

4.    In any event, Plaintiffs failed to plead any knowing application for less expensive visas, in lieu of more expensive H-1B visas, as required by Rules 8 and 9?

## Statement of the Case

On September 7, 2021, Plaintiffs Ralph Billington, Michael Aceves and Sharon Dorman (Plaintiffs) filed their Fourth Amended Complaint for Violations of the False Claims Act (Complaint). App. 35-83. The Complaint asserts three *qui tam* claims under the False Claims Act, with Plaintiffs as relators on behalf of the United States. *Id*. The United States itself declined to intervene in the case. Text Order, Dkt. #12.[1]

The Complaint asserts three visa-related claims under the False Claims Act (FCA) against HCL Technologies Ltd. and HCL America, Inc. (HCL): (1) that HCL deprived the United States of employment taxes on wages that HCL *would have owed* the government *if* HCL had paid the wages that Plaintiffs allege *should have been* paid to H-1B employees; (2) that HCL deprived the United States of visa fees that HCL *would have paid* the government *if* HCL had applied for the more expensive H-1B visas that Plaintiffs allege HCL should have applied for in lieu of less expensive visas; and (3) that HCL deprived the United States of a "property" interest in visas by creating "visa ready" workers. App. 72-73.

---

[1] References to "Dkt. #" are to documents contained in the district court docket. *See* F.R.A.P. 30(a)(2).

On September 28, 2021, pursuant to Federal Rule of Civil Procedure 12(b)(6), HCL filed its motion to dismiss all three claims because none of them stated an actionable claim under the False Claims Act. Supp. App. 26-67.

HCL explained that the tax-based claim failed because: (1) HCL had no "obligation" under the FCA to pay employment taxes on wages it never paid; (2) any such obligation would be barred by the FCA's Tax Bar provision; and (3) Plaintiffs failed to plead any knowing underpayment of wages. Supp. App. 39-40, 50-60.

HCL explained that the fee-based claim failed because: (1) HCL had no "obligation" under the FCA to pay fees on visas it never applied for; and (2) Plaintiffs failed to plead any knowing application for any inappropriate visas in lieu of applying for a more expensive H-1B visa. *Id*. at 8-9, 19-23.

HCL explained that the "property" claim failed because: (1) the alleged government interest in visas does not amount to "property"; and (2) Plaintiffs alleged no financial deprivation to the United States.

On July 28, 2022, the district court granted HCL's motion on all claims and entered judgment for HCL. App. 1-34.

The district court rejected Plaintiffs' argument that an "obligation" under the FCA can be "contingent." App. 26.

The district court thus dismissed Plaintiffs' tax-based theory because the tax code requires employment taxes only for wages paid, and thus "[a]t the time of the alleged misconduct, defendants did not have an established obligation to pay higher payroll taxes because defendants were not paying any wages that supported such taxes." App. 29.

Similarly, the district court dismissed Plaintiffs' fee-based theory because "Defendants' obligation to pay the government arose only upon applying for a visa, and thus "the only 'established' obligation was payment for the visa applications actually submitted." Because Plaintiffs do not allege Defendants failed to pay for any submitted application, "plaintiffs have not alleged that that defendants decreased or avoided any established obligations that were due to the government." App. 28.

The district court dismissed Plaintiffs' "property" theory because a visa is not "property" for purposes of an FCA claim and Plaintiffs thus did not allege the required deprivation to the government. App. 17.

This appeal followed.[2]

_____

[2] Plaintiffs do not appeal the dismissal of their "property" claim.

## Summary of the Argument

Plaintiffs' FCA claims on appeal are "reverse" claims pursuant to 31 U.S.C. § 3729(a)(1)(G). The essence of such claims is that, through knowingly improper conduct, the defendant failed to pay money it owed to the United States. That is, the "obligation" to pay the United States may not be merely potential or contingent. Instead, the "obligation" to pay money to the United States but must be one that exists at the time of the improper conduct.

Plaintiffs' tax-based claim—that HCL failed to pay the employment taxes it *would have paid* the government *if* HCL had paid the wages Plaintiffs say it *should have paid* H-1B employees—fails because it depends on a potential or contingent, rather than an existing, obligation to pay the government. The only obligation to pay employment taxes arises under the Internal Revenue Code, which requires such taxes be paid only with regard to wages actually paid. Plaintiffs do not allege HCL failed to pay any employment taxes with regard to wages actually paid. Moreover, even if HCL could have an obligation to pay employment taxes on wages not paid, that would make Plaintiffs' claim based on an obligation arising under the Internal Revenue Code, and thus be barred

by FCA § 3729(d). Furthermore, even if the claim was not otherwise precluded, Plaintiffs simply failed to allege facts sufficient to show that HCL ever knowingly failed to pay its H-1B employees the wages required, which is the factual premise of their claim.

Plaintiffs' fee-based claim—that HCL failed to pay H-1B visa fees it *would have paid* to the government *if* HCL had applied for the H-1B visas Plaintiffs say it *should have* applied for, rather than alleged inappropriate less expensive visas—fails because it depends on a potential or contingent, rather than an existing, obligation to pay the government. The only obligation to pay an H-1B visa fee arises under the immigration regulations, which require such fees be paid only with regard to H-1B visas actually applied for. Plaintiffs do not allege HCL failed to pay any H-1B visa fees for H-1B visas actually applied for. Furthermore, even if the claim was not otherwise precluded, Plaintiffs simply failed to allege facts sufficient to show that HCL ever knowingly applied for an inappropriate visa in lieu of a more expensive H-1B visa, which is the factual premise of their claim.

## Argument

### Standard of Review

This Court reviews the district court's order granting dismissal *de novo*, applying the same pleading standard as the district court. *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 206-07 (2d Cir. 2020). This Court may affirm the district court's dismissal on any grounds supported by the record, whether or not relied on by the district court. *Id.* at 207.

### Pleading Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint under the applicable pleading rule(s). Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-73 (2007).

Rule 8 requires that the complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal v. Ashcroft*, 129 S.Ct. 1937, 1949 (2009) (internal punctuation and citation omitted). A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Accordingly, neither "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," nor "legal

conclusion[s] couched as . . . factual allegation[s]," nor "naked assertions devoid of further factual enhancement" will suffice. *Id.* at 1949-50. Furthermore, any facts that are pleaded must "permit the court to infer more than the mere possibility of misconduct." *Id.* at 1950. Otherwise, "the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* (*quoting* Fed. R. Civ. P. 8(a)(2)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal punctuation and citation omitted).

"On certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." *Bell Atlantic*, 127 S.Ct. at 1973 n.14. In addition to Rule 8, Plaintiffs' claims under the False Claims Act are also subject to the heightened pleading requirements of Rule 9. *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 26 (2d Cir. 2016).[3] "Rule 9(b) requires that 'in alleging fraud or mistake, a party must state with

---

[3] "Rule 9(b)'s heightened pleading standard applies to reverse false claims." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021).

particularity the circumstances constituting fraud or mistake.'" *Id.* at 25 (*quoting* Fed. R. Civ. P. 9(b)). That means the complaint must specify who, what, where, when, and why of the claimed fraud. *Id.*

"The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Id.*

I.     Plaintiffs fail to state a claim regarding taxes on H-1B wages.

FCA "[s]ubsection (a)(1)(G) is referred to as the reverse false claims act because it covers claims of money *owed* to the government." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021) (emphasis in original).

Plaintiffs' first theory on appeal asserts that HCL may be held liable under FCA § 3729(a)(1)(G) because *if* it had paid the higher wages they say *should have been* paid to H-1B employees, *then* it *would have been* obligated to pay more in employment taxes to the government.

The district court correctly dismissed this tax-based claim because such a potential or contingent obligation to pay the government is not actionable. App. 21, 30. Reverse-FCA claims require an existing obligation—*i.e.*, that the money at issue have been "owed" to the government at the time of the wrongful conduct. The district court could also have dismissed Plaintiffs' claim because: the claim is barred by 31 U.S.C. § 3729(d), in that the alleged obligation to pay the government arises under the tax code; and the Complaint fails to allege facts showing HCL knowingly paid any H-1B employees less than the law requires.

A. <u>Plaintiffs fail to show an obligation to pay the Government.</u>

1. <u>The Text of the FCA requires an existing duty to pay</u>.

To state a reverse-FCA claim, Plaintiffs must show that HCL either knowingly made a false statement material to "an obligation to pay or transmit money or property to the Government," or knowingly and improperly avoided or decreased "an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

"Obligation" is defined in the FCA as: "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

Thus, restating Plaintiffs' reverse-FCA burden by interpolation, Plaintiffs must show that at the time of the alleged improper conduct, HCL had "an established duty" "to pay . . . the Government" the additional money at issue.

"'Established' is the key word," and it refers to the obligation to pay the government. *United States ex rel. Simoneaux v. E.I. DuPont De Nemours & Co.*, 843 F.3d 1033, 1037 (5th Cir. 2016) (holding

"established" refers to the duty to pay, while "fixed" refers to the amount owed). Reverse-FCA liability thus requires that the obligation to pay to the government the money allegedly "owed" be "one existing at the time of the improper conduct." *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 506 (3d Cir. 2017); *see also United States ex rel. Ibanez v. Bristol-Myers Squibb Co.,* 874 F.3d 905, 916 (6th Cir. 2017) (a claim requires improper conduct "at a time that the defendant owed to the government an obligation"); *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1223 (11th Cir. 2012) ("To sustain a reverse false claim action, relators must show that the defendants owed an obligation to pay money to the United States at the time of the allegedly false statements."); *United States ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, 398 F.App'x 233, 235 (9th Cir. 2010) ("Even if the invoice were false, State Farm cannot be liable under the False Claims Act, because State Farm had no obligation to reimburse Medicare at the time St. Luke's submitted its bill to Medicare.").

"In other words, there is **no** liability for obligations to pay that are merely potential or contingent." *United States ex rel. Barrick v. Parker-*

*Migliorini Int'l, LLC*, 878 F.3d 1224, 1231 (10th Cir. 2017) (emphasis supplied).

Plaintiffs thus had the key legal issue exactly backward when they told the district court, "[t]he term 'obligation' is now defined . . . and includes fixed and contingent duties owed to the Government." Supp. App. 88. The reason Plaintiffs had the key legal issue wrong is that they quoted a source that was not speaking about the statute's definition of "obligation." The quoted language comes from a pre-enactment Senate Committee Report describing the *proposed* definition of "obligation" contained in the original bill. *Id.* at 15-16 (*quoting* S. Rep. No. 111-10, E. "'Reverse' false claims," at 13-14 (March 23, 2009)).[4]

However, the definition Plaintiffs and the Committee discussed is not the one actually enacted by Congress.[5] Instead, an adopted floor amendment to the bill significantly revised the Committee's definition of

---

[4] *See* S. 386, 111th Cong. (as reported to the Senate on March 5, 2009), §4(b)(3), available at https://www.congress.gov/bill/111th-congress/senate-bill/386/text ("the term 'obligation' means a fixed duty, or a contingent duty arising from an express or implied contractual duty arising from an express or implied contractual, quasi-contractual, grantor-grantee, licensor-licensee, statutory, fee-based, or similar relationship, and the retention of any overpayment.").

[5] Plaintiffs also cite the Committee Report repeatedly throughout their brief. *See* P. Br. 24 n21, 29-30, 50, 59-60.

"obligation."' *Simoneaux*, 843 F.3d at 1038. The definitional change was made due to concerns the FCA might be misused by plaintiffs—"motivated by personal gain"—to assert reverse-FCA claims where there was no existing obligation to pay the Government at the time of the alleged improper conduct. Using the example of a fine for improper conduct, Senator Kyl explained the amendment:

> The original language spoke of 'contingent' obligations.
>
> *        *        *
>
> Obviously, we don't want the Government or anyone else suing under the False Claims Act to treble and enforce a fine before the duty to pay that fine has been formally established. It is unlikely that Justice would ever have brought suit to enforce a claim of this nature, but the FCA can also be enforced by private relators who often may be motivated by personal gain and not always exercise the same good judgment that the Government usually does.
>
> To preclude such a reading of the act, my amendment strikes contingent obligations from the FCA's new definition of 'obligation.'

155 Cong. Rec. S 45639 (daily ed. Apr. 22, 2009) (statement of Sen. Kyl).

Thus, the legislative history reinforces the plain meaning of the text. *United States v. Missouri Pac. R. Co.*, 49 S.Ct. 133, 136 (1929) (although legislative history may not be used to alter the plain meaning of the text, it may be used to confirm it). *Accord United States v. Epskamp*, 832 F.3d 154, 165 (2d Cir. 2016). There can be no reverse-FCA

claim unless the defendant had, at the time of the improper conduct, a duty to pay the government the money at issue.[6]

2. <u>The only duty to pay the taxes is potential or contingent.</u>

The fatal flaw in Plaintiffs' tax-based claim is that it depends on a "merely potential or contingent" obligation to pay the Government the money at issue.

Plaintiffs' claim is based on the duty to pay employment taxes. *See* App. 37, 51, 72, 81.[7] The only obligations to pay employment taxes are the ones set forth in the Internal Revenue Code. *See* 26 C.F.R. § 601.401;

---

[6] Although Sen. Kyl used an example of a contingent penalty or fine, the statutory language is not limited to such situations. *See Petras*, 857 F.3d at 505-506 (finding that although the circumstances may differ from Senator Kyl's example of a penalty, "the difference is without a distinction. The same basic principle animating Senator Kyl's concern applies. Petras should not be able to bring a reverse FCA claim alleging that the Simparel defendants improperly avoided an obligation to pay the Government because the obligation did not exist when the defendants' alleged misconduct occurred."). Furthermore, there is no indication Sen. Kyl intended other contingent payment obligations to be covered. In any event, legislation is a compromise, and thus the statements of individual legislators or committees cannot change the plain meaning of the language enacted, whose words express congressional intent. *See W. Va. Univ. Hosps., Inc. v. Casey*, 111 S.Ct. 1138, 1147 (1991); *Bd. of Govs. of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 106 S.Ct. 681, 688-89 (1986).

[7] Plaintiffs focus on HCL's "obligation" to pay *employees* is beside the point here because the question for FCA liability is whether there is an "obligation . . . to pay . . . the Government." 31 U.S.C. § 3729(a)(1)(G).

26 U.S.C. §§ 3111 and 3301. The Internal Revenue Code requires only that an employer must pay the government employment taxes with respect to wages actually "paid" to employees. *Id.*

Plaintiffs, however, do not allege facts showing that HCL failed to pay any employment taxes for wages actually "paid" to employees. Indeed, the only money that Plaintiffs claim went unpaid to the government consist of the higher employment taxes that HCL *would have paid* to the government *if* it had paid the higher wages Plaintiffs allege *should have been* paid to H-1B workers.

Plaintiffs' claim thus epitomizes a "potential" or "contingent" obligation to pay the taxes at issue, because it is an obligation to pay triggered only *if* some other event occurs. *See In re Victory Entertainment, Inc.*, 2022 WL 17343490, *2 (C.D. Cal. Nov. 30, 2022) (*quoting* Oxford English dictionary (U.S. version) as defining "'contingent' as subject to chance or arising only if certain circumstances occur or exist."); *see In re Qmect, Inc.*, 368 B.R. 882, 884 (N.D. Cal. 2007) (*quoting* Black's Law Dictionary as defining a "contingent liability" as one "that will occur on if a specific event happens").

For this reason, the district court correctly held Plaintiffs' H-1B claim for underpaid employment taxes fails for lack of an established duty. App. 29. "At the time of the alleged misconduct, defendants did not have an established obligation to pay higher payroll taxes because defendants were not paying any wages that supported such taxes." *Id.*

> 3.     Plaintiffs' theory stretches the FCA beyond its text.

Indeed, any other result would not only stretch reverse-FCA liability beyond the text of the statute, it would turn the FCA into what the Supreme Court says it is not. "The False Claims Act is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs., Inc. v. United States*, 136 S.Ct. 1989, 2003 (2016).

Plaintiffs' strained interpretation would turn the reverse-FCA provision into a treble damages truncheon used by would-be private wage police to punish any employer accused of underpaying owed wages.

Here, Plaintiffs allege the obligation to pay employees higher wages arises from federal H-1B regulations governing wage obligations. But work visa regulations are far from the only federal requirements setting forth an employer's obligations to pay wages at certain levels. The Fair

Labor Standards Act generally requires employers to pay employees at least $7.25 per hour. 29 U.S.C. § 206(a). Per Executive Order 14026, federal contractors must pay their employees $15.00 per hour. 86 FR 22835 (April 30, 2021). When an employee works more than 40 hours per week, the FLSA requires his or her employer to pay one and one-half times that employee's "regular rate" for any hour over 40 worked that week. 29 U.S.C. § 207. The Equal Pay Act requires that an employee is entitled to receive as wages at least as much as his or her employer pays to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions. 29 U.S.C. § 206(d).

Every failure to comply with these other federal requirements would also deprive the Government of the extra employment taxes that *would have been* paid *if* the employer *would have complied* with the law. And if Plaintiffs' theory were correct, then every such failure to pay required wages could also give rise to a reverse-FCA claim.

Indeed, it is far from clear there is any limiting principle that would prevent Plaintiffs' view of the FCA from expansion to other sources of an employer's obligation to pay higher wages. The only difference between a

wage claim based on a private contract, and one based on a federal statute, is the source of the obligation to pay *the employee*. But a reverse-FCA claim does not depend on the source of the obligation to pay the employee. Instead, every reverse-FCA claim necessarily depends on the "obligation to pay . . . the Government." 31 U.S.C. § 3729(a)(1)(G). And underpayment of the wages required by a contract deprives the government of extra employment taxes just as does underpayment of wages required by H-1B regulations, the FLSA, and the EPA.

Similarly, there is no apparent reason Plaintiffs' theory would not apply to alleged failures to comply with state statutes or local ordinances that require even higher wages than federal law requires. After all, failure to pay the higher wages required by those laws also have the corollary effect of lessening the employer's federal tax payments.

Adherence to the text avoids the expansive result encompassed by Plaintiffs' theory. There is no "obligation" to pay the government extra employment taxes on wages never paid. And thus a theory predicated on wages that should have been paid finds no purchase in the FCA.

B.    <u>Plaintiffs' claim also fails pursuant to 31 U.S.C. § 3729(d).</u>

Even if HCL had the requisite "obligation" to pay the government additional taxes, any claim based on that obligation would be precluded by the Tax Bar provision of the FCA.

The Tax Bar provision states: "This section does not apply to claims, records, or statements made under the Internal Revenue Code of 1986." 31 U.S.C. § 3729(d). As this Court recognizes, the Tax Bar thus works in concert with § 7401 of the Internal Revenue Code: "No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." 26 U.S.C. § 7401, *quoted in*, *United States ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*, 377 F.3d 145, 153 (2d Cir. 2004).

Here, Plaintiffs (1) make their FCA claim directly under the IRC, and, (2) as relief, they explicitly seek the "recovery of taxes."[8] The essence

---

[8] Claims by private persons under the False Claims Act are brought for the person and the United States in the name of the United States, and the private plaintiffs become entitled to a portion of any amounts they recover on the behalf of the United States. 31 U.S.C. § 3730(b), (d).

of any reverse-FCA action is the claim "of money *owed* to the government." *Foreman*, 19 F.4th at 119. The entire basis of Plaintiffs' claim regarding underpaid H-1B employees is that HCL "owed" money to the government in the form of employment taxes. *See* App 37, 51, 72, 81. And the only possible source of an obligation to pay employment taxes (contingent though it is) is found in the IRC. *See* 26 C.F.R. § 601.401; 26 U.S.C. §§ 3301 and 3111. Moreover, and as would be expected in light of the nature of their claim, Plaintiffs seek as relief to "recover" "three times the amount of damages sustained by the government," which include "millions of dollars in lost . . . tax revenue." App. 47.

Because Plaintiffs base their claim—that monies are owed to the government—on provisions of the Internal Revenue Code, and because Plaintiffs seek as relief to recover unpaid taxes, their claims are barred by the plain language of §§ 3729(d) and 7401.

Numerous federal court decisions reinforce that the Tax Bar precludes Plaintiffs' claim here.

In *Lissack*, this Court analyzed the Tax Bar's reach. Based on the text of §§ 3729(d)[9] and 7401, the Court concluded that FCA claims

---

[9] At the time, the same provision was numbered § 3729(e).

seeking to recover federal taxes are barred. *Lissack*, 377 F.3d at 152-53. After establishing that baseline, the Court went on to consider whether the Tax Bar reached even further—*i.e*, to bar claims "where the relator does not, strictly speaking, seek to recover federal taxes." *Id*. at 153. Thus, this Court held: "Though, as he has characterized his claim in the complaint, Lissack does not seek to collect taxes, we conclude that the claims he asserts nonetheless fall squarely within the language and evidence intent of the Tax Bar." *Id*. (going on to give two reasons for also applying the Tax Bar in cases where taxes are not the part of the relief sought). *See also State ex rel. American Advisory Servs., LLC v. Egon Zehnder Int'l, Inc*., 592 F. Supp.3d 183, 211 (S.D.N.Y. 2022) ("Indeed, the Second Circuit has explained that Congress intended to prevent not only private actions that seek to recover taxes . . ."); *Greene v. I.R.S*., 2008 WL 5378120, *6 (N.D.N.Y. Dec. 23, 2008) (Tax Bar precludes "claims that depend on a violation of the Tax Code *in addition to claims seeking to recover federal taxes*"), *aff'd*, 348 F.App'x 625 (2d Cir. 2009) (summary order).

Other federal courts have similarly concluded that FCA claims rooted in the recovery of unpaid taxes, including employment taxes, are

barred. *See Canen v. Wells Fargo Bank, N.A.*, 188 F. Supp.3d 164, 170 (D.D.C. 2015) (dismissing FCA claim because, among other things, "Plaintiffs root their FCA claims in lost 'income tax revenue.'"). In *Lesnik v. Eisenmann SE*, as here, the plaintiffs alleged that underpaid wages gave rise to a reverse-FCA claim because higher paid wages would have meant more employment taxes for the government. 2018 WL 4700342, *5 (N.D. Cal. Oct. 1, 2018). Among the reasons for dismissing the case, the district court held: "Plaintiffs' suggestion that FCA liability can rest on an attempt to minimize 'taxes including social security, FICA and medicare' is at odds with the FCA's 'Tax Bar.'" *Id.* In *Carter v. G & S Food Shop*, the district court dismissed plaintiff's claim that the defendant had knowingly failed to pay and withhold employment taxes for a Mr. Alryashi, and had paid the same employee "off the books" without recording or reporting the wages to the IRS. 2013 WL 6421833, *1 (E.D. Mich. Oct. 10, 2013). The district court held: "plaintiff's claims here relating to the alleged failure to pay or withhold 'employment taxes,' and the alleged failure to report wages to the Internal Revenue Service are barred by 31 U.S.C. § 3729(d)]." *Id.* at *3. Similarly, a district court found the Tax Bar barred plaintiff's claims that Subway Stores and Jet's

Pizza had failed to withhold income taxes for employees, failed to report wages to the IRS, failed to withhold Social Security and Medicare taxes, and failed to pay the employer's share of those taxes. *Carter v. Subway Store #6319*, 2012 WL 666838, *1, 4 (E.D Mich. Feb. 29, 2012).

C.   Plaintiffs fail to show any knowing underpayment.

Even if HCL had an "obligation" to pay employment taxes for unpaid wages, and even if the Tax Bar did not preclude a claim based on such an "obligation," Plaintiffs have still failed to state a claim that satisfies their pleading obligation. Specifically, Plaintiffs have failed to show that HCL knowingly underpaid any H-1B employee. Thus, Plaintiffs have failed to show the knowing false statement or avoidance on which their claim depends. Unless HCL knew it was not paying an employee what H-1B regulations require, then it cannot possibly have knowingly made a false statement regarding, or knowingly concealed, an obligation to pay the government more taxes.

1.   Alleging company cost savings by using H-1B workers does not show underpayment of any H-1B workers.

Plaintiffs' Complaint spills much ink alleging that HCL had a scheme to save money using H-1B workers. The issue is a red herring.

Even if the allegations were true, that does not mean HCL paid its H-1B employees less than it was required to pay them.

HCL must pay an individual H-1B employee the greater of either what HCL pays any other comparably skilled HCL employees in the geographic area or the prevailing wage for comparably skilled employees in the geographic. 20 C.F.R. §655.731(a). However, no law precludes HCL from locating H-1B workers in parts of the United States where HCL has no comparable, non-H-1B employees and where prevailing wages are lower than they are in other parts of the country.[10] While Plaintiffs may find the current state of the law distasteful, a reverse-FCA claim requires more than claims an employer utilized H-1B visas to save money.

2. <u>Plaintiffs fail to show any knowing wage violation.</u>

Plaintiffs do make conclusory allegations that one aspect of the alleged scheme involved HCL knowingly making false statements about what it would pay H-1B employees and/or knowingly and improperly paying H-1B employees less than it was supposed to pay them.

---

[10] Because HCL is an H-1B dependent employer, its H-1B employees are also exempt from displacement requirements so long as they receive at least $60,000 per year. 20 C.F.R. § 655.737; *See* App. 41.

But what Plaintiffs fail to do is allege particularized facts *showing* that HCL knowingly paid any H-1B employee(s) less than it was supposed to pay.

a.   Plaintiffs provide not a single example.

First, the most obvious sign of Plaintiffs' pleading deficit is the Complaint's failure even to identify a single H-1B employee who HCL knowingly underpaid, much less the details surrounding any such underpayment. *See United States ex rel. Sibley v. Univ. of Chicago Med. Ctr.*, 44 F.4th 646, 656 (7th Cir. 2022) ("Under Rule 9(b), though, generalized allegations of fraudulent practices are insufficient. Rather, to defeat dismissal, specific representative examples of false submissions are required."); *United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 880-881 (6th Cir. 2017) ("The identification of at least one false claim with specificity is an indispensable element of a complaint that alleges a False Claims Act violation in compliance with Rule 9(b)"); *United States ex rel. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) ("We agree . . . that the particularity requirement of Rule 9(b) does not permit a False Claim Act plaintiff merely to describe a private scheme in detail but then allege simply . .. that claims requesting illegal payments must

have been submitted, were likely submitted or should have been submitted to the Government") (citing *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) ("requiring relator to 'provide some representative examples of the defendants' alleged fraudulent conduct'") and *United States ex rel Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 (11th Cir. 2002)).

This Court has also indicated it requires a FCA Complaint to allege facts showing actual specific instances of the alleged scheme, albeit with an exception not applicable here.

In *United States ex rel. Polansky v. Pfizer, Inc.*, this Court stated it had not yet decided whether it required pleading facts showing an actual false claim or, instead, required particularized details of a scheme paired with facts leading to a "strong inference that claims were actually submitted." 822 F.3d 613, 619 (2d Cir. 2016).

The next year, however, the Court ruled that a FCA plaintiff need not necessarily show an actual false submission, *if* the plaintiff had pleaded an actual false claim "on information and belief," and pleaded facts "establishing specific reasons why such information . . . is peculiarly within [defendant's] knowledge," and pleaded specific facts showing

falsification, and also pleaded "facts supporting a strong inference" that the falsified claims were actually submitted. *United States ex rel. Chorches v. Am. Med. Response*, 865 F.3d 71, 81-84 (2d Cir. 2017).

Most recently, citing *Chorches*, this Court affirmed dismissal of FCA and reverse-FCA claims that did not identify a specific example of the alleged scheme. The Court affirmed because the plaintiff did not "set forth any facts establishing specific reasons" why information about the false claims was uniquely within the defendant's knowledge, nor "describe specific instances of the implementation of [the alleged] scheme." *United States ex rel. Gelbman v. City of New York*, 790 F.App'x 244, 248-49 (affirming dismissal FCA and reverse-FCA claims). The Court found the lack of pleaded facts showing why the plaintiff did not have more specific information "particularly noteworthy" in light of his position as an insider. *Id.* at 248.

Here, although Plaintiffs are management level employees, whose responsibilities include "considerable access to, and knowledge of HCL's visa and staffing practices," "hiring and staffing of visa-dependent employees," and being "intimately involved in HCL's visa practices," they have provided no information showing HCL knowingly paid any H-1B

employee less than the law requires, much less shown some systematic scheme, nor even an explanation as to why given their positions and access to H-1B employees, they have not identified one example. App. 45-47.

b.     <u>Plaintiffs show no knowing underpayment</u>.

Second, Plaintiffs claim fails even under the more relaxed, alternative standard identified in *Polansky*. Not only is there no "strong inference of fraud," there are no factual allegations of any sort that HCL knowingly underpaid H-1B employees. Plaintiffs may allege a "scheme" to save money by using H-1B employees, but the closest the Complaint gets to allegations that the "scheme" includes knowing underpayment of H-1B employees in violation of law is at ¶¶ 73-75. App. 56.

These paragraphs and the exhibits they rely on, however, fall far short of Rule 8 or 9's requirements that Plaintiffs plausibly show HCL knowingly underpaid its H-1B employees. Even under the less demanding Rule 8, it is not enough to allege conclusions, nor to set forth facts that are merely consistent with allegations of liability. *Iqbal*, 129 S.Ct. at 1949. The exhibits do not show any knowing underpayment in

violation of law as part of an alleged scheme to save money. Indeed, they show the opposite.

Paragraph 73 is nothing but a conclusory allegation that "HCL knows that it underpays its H-1B visa workers in violation of U.S. visa laws." App. 56. The referenced exhibit pages also do not show any such knowing underpayment. Instead, as Plaintiffs describe in ¶ 68, Exhibit 57 shows at most HCL's recognition that it can save money using H-1B employees.[11] App. 53; Supp. App. 1-19. Again, the fact HCL knows that H-1B workers may be less expensive than hiring non-visa workers does not show a violation of law, nor does HCL's strategic use of H-1B employees to save money show a violation of law. There is no requirement an H-1B worker be paid the same as what it would cost to hire a non-visa worker. Exhibit 39 shows the same thing. Dkt. #48-39.[12]

Exhibits 63 and 64 are different, but they actually *undermine* Plaintiffs' allegations that HCL is knowingly underpaying H-1B

---

[11] Similarly, Paragraph 69 shows only cost differences without any fact suggesting that any H-1B employee has knowingly been paid less than the law requires. App. 53-54.

[12] Exs. 39, 64, 66, and 67 were filed under seal at District Court Dkt. #48, but can be found as attachments to the unredacted Complaint at District Court Dkt. #49.

employees in violation of law. Supp. App. 20-25; Dkt. #48-64. These exhibits demonstrate that, yes, circumstances (such as delay between when an H-1B is filed with the expected salary and the actual entry of the employee) may cause the represented wage to be lower than compliance requires. But the exhibits do so only in the context of showing that HCL actually tries to address the issue to ensure compliance when it becomes aware of any discrepancy. *See, e.g.* Supp. App. 23 ("While doing the audit . . . we found the below cases having lower Assured salary than the LCA wages. . . Can you please get this checked?);[13] Dkt. #48-64 at 2 (describing the urgency of amending LCAs).

Paragraph 74 again offers no factual support that HCL knowingly underpaid anyone in violation of law. Again, if anything the allegation and referenced exhibits show only that HCL strives to uncover wage discrepancies through "internal audit" and to remediate them. App. 56; *see, e.g.*, Dkt. #48-66 at 6 (262674) ("Need to pay arrears and release revised letters.").

---

[13] LCA refers Labor Condition Application, on which the employer reports the required wage as part of the H-1B process.

Paragraph 75 not only misrepresents the cited Exhibit 67, it ignores that Exhibit 67 again supports only the conclusion that, when a discrepancy is uncovered, HCL works to ensure compliance. App. 56; Dkt. #48-67. Plaintiffs' quote from the exhibit omits that the full statement refers to "earlier practice," which given the preceding sentence means pre-2012. *See* Dkt. #48-67 at 3 (264267). In any event, there is nothing illegal about paying the lowest of the available wages. Moreover, Plaintiffs ignore that the email instructs both that "the applicable LCA wages is to be re-determined" and that "[t]he applicable LCA wages will have to be paid for the period." *Id.*

In short, the Complaint fails to allege facts that plausibly show HCL's liability. If anything, the Complaints' exhibits reveal only that Plaintiffs' claims depend on conclusory allegations of a conspiracy theory, rather than any supporting facts. As a result, even if Plaintiffs could show an existing obligation to pay employment taxes on unpaid wages (they cannot), and even if such an obligation could avoid the Tax Bar (it could not), Plaintiffs' tax-based theory fails to state a claim. Accordingly, the district court's dismissal order should be affirmed.

D.   <u>Plaintiffs' arguments lack merit</u>.

Plaintiffs' arguments for reversal lack merit. Plaintiffs' brief attempts to weave an argument out of whole cloth, but the strands do not hold together.

1.   <u>Plaintiffs' account of FCA history is misplaced.</u>

Only the text of the current FCA, as actually enacted, governs this case. Even if it mattered, Plaintiffs' account of the statute's history would be a particularly inappropriate guide, as it is rife with misleading and inapposite suggestions.

The 2009 amendments to the FCA did only one thing relevant to the outcome of this case—*i.e*, they added a definition of "obligation" clarifying that a reverse-FCA claim requires an "established duty" "to pay . . . the Government." 31 U.S.C. § 3729(b)(3). As set forth above, that definition makes clear that the "obligation" "to pay . . . money" "to the Government" cannot be contingent, but rather must be one "owed" to the government at the time of the improper conduct. *Foreman*, 19 F.4th at 119; *Parker-Migliorini*, 878 F.3d at 1231 *Petras*, 857 F.3d at 506; *Simoneaux*, 843 F.3d at 1037; *Matheny*, 671 F.3d at 1223.

The fact the 2009 amendment added a prong to § 3729(a)(1)(G), allowing for reverse-FCA liability in the absence of a false statement, is inapposite here because that prong too requires an "obligation." In light of the new prong's immateriality to the dismissal of Plaintiffs' action, it is telling that Plaintiffs believe the district court's failure to mention the prong is the "most evident" manner in which the district court erred. P. Br. at 16.

The fact the 2009 definition of "obligation" includes the words "whether or not fixed" is also inapposite because those words refer only to whether the amount of the money "owed" must be "fixed." *Simoneaux*, 843 F.3d at 1037. Thus, those words also do not change the fact there must first be an "established duty" "to pay . . . money" "to the government."

As a result, Plaintiffs' references to what the 2009 amendments did or did not do must be taken with a grain of salt. The 2009 amendments may have expanded the FCA is some ways, but not in any way material to this case. On the material issue, the 2009 amendments enacted a narrower view of reverse-FCA claims that precludes claims, like Plaintiffs', based on alleged potential or contingent obligations to pay.

### 2. Plaintiffs' legislative history is similarly misplaced.

The singular relevance of the 2009 amendment also makes inapposite in this case Senate Committee Report No 111-10, repeatedly cited by Plaintiffs. *See* P. Br. 24 n21, 29-30, 50, 59-60. Whatever the Report might have to say about some other issue, it can have little useful to say about the FCA's dispositive definition of "obligation."

That is because the Senate Committee Report was reporting about an entirely different definition of "obligation," later rewritten by a floor amendment. Although the original bill *would have* expanded the definition of "obligation" to include "contingent" obligations, the amendment struck that term. *Compare* S. Rep. No. 111-10, E. "'Reverse' false claims," at *13-14, "obligation" at *23 (March 23, 2009)) *and* 31 U.S.C. § 3729(b)(3); *see also Simoneaux*, 843 F.3d at 1038 (explaining that the originally proposed definition was replaced by the one enacted). If anything, the Report highlights (by contrast with the enacted text) that "contingent" obligations are not covered by § 3729(a)(1)(G).

### 3. Plaintiffs' attack on case law is misplaced.

Plaintiffs' attempts to use the Senate Committee's comments about particular cases, and Plaintiffs' allegations that the 2009 amendments "abrogated" those cases, are also misplaced.

In an effort to boost their claim, Plaintiffs state that "[t]he two leading cases that interpreted 'obligation' narrowly'"—*American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729 (6th Cir. 1999) and *United States v. Q Int'l. Courier, Inc.,* 131 F.3d 770 (8th Cir. 1997)—were criticized by the Senate Committee Report and the Department of Justice, and were "abrogated" by the 2009 amendments. P. Br. 22, 24 n.21, 25, 26 n.25, 29-30.[14]

Plaintiffs' (mis)characterization neglects to mention that the cases were not criticized or "abrogated" in any manner material to this case.

The DOJ letter makes explicit that it criticizes the two cases only because they required that the "specific amount owed" be "fixed." *See* Letter from M. Faith Burton, Acting Ass't Att'y Gen., Dep't of Justice, to

---

[14] Plaintiffs appear determined to undermine *American Textile* in particular because the district court's opinion cited with approval (among many other cases) the Northern District of California's opinion in *Lesnik v. Eisenman SE*, 374 F. Supp.3d 923 (N.D. Cal. 2019), which in turn had cited (among many other cases) *American Textile*. *See, e.g.* P. Br. at 43.

the Hon Patrick J. Leahy, Chairman, Comm. On the Judiciary, app. at 3 (April 1, 2009).[15] The Senate Committee Report too only referenced the two cases with regard to the fact they had required a "fixed amount debt obligation." *See* S. Rep. No. 111-10, E. "'Reverse' false claims," at 14 n.13.

As regards the relevant issue, the DOJ letter actually supports HCL's position. The DOJ letter states: "to ensure that this provision reaches only a party's wrongful attempts to minimize the party's obligations to the Government, the Department recommends replacing the phrase 'a fixed duty, or a contingent duty' with the phrase 'an established duty, whether or not fixed.'" *Id.* Thus, the DOJ letter recommended that the Senate Committee change its proposed definition of "obligation" to the one actually enacted—*i.e.*, that "contingent duty" be stricken from the definition.[16]

---

[15] Available at :
https://www.justice.gov/sites/default/files/ola/legacy/2009/06/03/040109-s386-fraud-enforcement-recovery-act.pdf.
[16] DOJ's recommendation to change the definition of "obligation"—striking "contingent duty" and identical to the one enacted—did not limit the exclusion of contingent duties to contingent penalties or fines. Similarly, DOJ has made clear that the reason contingent penalties cannot be the basis of a reverse-FCA claim depends not on the fact the government maintains the discretion to impose the penalty, but rather instead on the more general proposition that they are not present obligations to pay. "It is the absence of a duty to pay money to the United

More importantly, both cases in fact remain good law for the point at issue—*i.e.* whether the allegedly "owed" money at issue must be "owed" at the time of the improper conduct. On that point, the Sixth Circuit and its district courts continue to cite *American Textile* and its progeny for the proposition that a reverse-FCA claim can arise only where the defendant owed money to the government "at the time" of the alleged improper conduct. *See Ibanez*, 874 F.3d at 916; *United States ex rel. Maur v. Hage-Korban*, 2020 WL 912753, *7 (W.D. Tenn. Feb. 25, 2020); *United States v. Complete Fitness Rehab., Inc.*, 2016 WL 5476277, *9 (E.D. Mich. Sept. 29, 2016).

Similarly, the Eighth Circuit has observed that the adopted 2009 amendment to the FCA "tracks closely with what had been the definition adopted by our circuit." *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1073 n.9 (2016). Immediately thereafter, the Eighth Circuit cites *Q Int'l Courier* and describes the adopted definition as follows: "defining 'obligation' as 'a present duty to pay money or property that was

---

States, not the mere presence of some potential government discretion that excludes unassessed penalties from the scope of the statute." Amicus Curiae Brief of the United States in Support of Appellant, *Simoneaux*, 843 F.3d 1033 (5th Cir. 2016), Doc. No. 00513523918 (May 26, 2016), 2016 WL 3090877.

created by a statute, regulation, contract, judgment, or acknowledgement of indebtedness; and not 'merely a potential liability.'"

        4.   <u>Plaintiffs' cited cases do not help them.</u>

In their brief's section presenting argument regarding their tax-based theory, Plaintiffs cite a handful of decisions. *See* P. Br. 33-43. None of them helps Plaintiffs.

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242 (3d Cir. 2016) involves customs duties owed for imported goods. The Court's finding, of an existing obligation to pay custom duties at the time of the wrongful conduct, is easily explained by the fact that the obligation to pay a customs duty is in the customs law itself and is deemed to have accrued when and from the fact that the good is imported. *Id.* at 246; *see also Simoneaux*, 843 F.3d at 1039-40 (distinguishing *Victaulic*). "[I]f such [mismarked] goods nevertheless escape detection and are released into the United States, the ten percent ad valorem duty is deemed to 'have accrued at the time of importation' and is due and owing, without exception. This is precisely what CFI alleges Victaulic did in a systematic way for years." 839 F.3d at 254.

Thus, Victaulic's actual importation of (mismarked) goods immediately implicated an existing duty to pay the government the correct fee for the imported goods. That cannot help Plaintiffs because the obligation to pay the government arises from the Internal Revenue Code, which makes the obligation (to pay employment taxes) contingent on the actual payment of wages (and subject to the Tax Bar).

*United States ex rel. Schaengold v. Mem'l. Health, Inc.*, 2014 WL 6908856 (S.D. Ga. Dec. 8, 2014) involves a knowing attempt to conceal, by false reports, that the hospital was not entitled to certain Medicare payments because of a federal statute. *Id.* at *9. The district court easily disposed of the defendant's arguments that the FCA does not cover statutory obligations and, that even if it did defendant had not actually violated the statute. *Id.* at *16-17. If anything the case supports HCL in that it cites *American Textile* (which Plaintiffs have tried to discredit), among other cases, for the following description of a reverse-FCA claim: "It is of primary importance that a plaintiff show that the defendant owed a definite and clear obligation [to pay money to the Government] at the time of the false statement." *Id.* at *15.

*United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234 (11th Cir. 1999) predates the current statute and does not involve allegedly underpaid wages or taxes. In any event, the case does not support Plaintiffs' position because it involves a contract, between the defendant and the U.S. Air Force, that itself created an existing "obligation to pay" the money at issue "to the Government" (for airplane parts). *Id.* at 1237.

*Franchitti v. Cognizant Tech. Sol.*, 555 F.Supp.3d 63 (D.N.J. 2021) does not address the "obligation" to pay higher employment taxes on unpaid wages because, as Plaintiffs note, no party in the case raised the issue. As will be addressed more fully, *infra*, the *Franchitti* opinion is fatally flawed in a number of respects. Among the several things the opinion gets wrong, however, is its interpretation of this Court's *Lissack* decision with regard to the Tax Bar.

The *Franchitti* opinion ignores that FCA § 3729(d) bars claims made under the Internal Revenue Code, and that a reverse-FCA claim like Plaintiffs'—whose only alleged "obligation to pay . . . money . . . to the Government" is an alleged obligation to pay taxes required by the Internal Revenue Code—is thereby a claim made under the Internal Revenue Code. *See Lissack*, 377 F.3d at 152. Similarly, the *Franchitti*

opinion ignores this Court's observation that § 3729(d) works in conjunction with 26 U.S.C. § 7401, which precludes private claims for the "recovery of taxes," and that a reverse-FCA claim like Plaintiffs'— seeking allegedly unpaid employment taxes as relief—is a barred private claim for the "recovery of taxes." *See Lissack*, 377 F.3d at 153.

Having ignored the statutory language, the *Franchitti* opinion then ignores this Court's repeated statements in *Lissack* making clear, based on the statutory text, that claims seeking to recover taxes are precluded by the Tax Bar. 377 F.3d at 153. It was from that starting point that this Court went on to find that, despite the fact Mr. Lissack was "not, strictly speaking, seek[ing] to recover federal taxes," the Tax Bar also precluded his claim because it (1) depended on a violation of the tax code and (2) the IRS has authority to recover the amounts at issue. *Id.* The *Franchitti* opinion mistakenly believed the "two-part test" it identified in *Lissack* was the entirety of the Tax Bar, rather than an additional application of it.

District courts in this Circuit have not made the same mistake as the *Franchitti* court. *See American Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.*, 592 F. Supp.3d 183, 211 (S.D.N.Y. 2022) ("Indeed, the Second

Circuit has explained that Congress intended to prevent not only private actions that seek to recover taxes . . ."); *Greene v. I.R.S.*, 2008 WL 5378120, *6 (N.D.N.Y. Dec. 23, 2008) (Tax Bar precludes "claims that depend on a violation of the Tax Code *in addition to claims seeking to recover federal taxes*"), *aff'd*, 348 F.App'x 625 (2d Cir. 2009) (summary order).

Although Plaintiffs say it supports the proposition that "underpayment of H-1B wages and taxes itself give rise to reverse-FCA liability," the opinion in *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp.3d 1010 (N.D. Cal. Mar. 16, 2020) contains neither the words "underpayment" nor "H-1B" nor "wages" nor "tax(es)," P. Br. at 38. If Plaintiffs meant the case to support their next sentence, about timing, the citation is beside the point because Plaintiffs' claim in this case—that HCL *would have been* obligated to pay higher employment taxes *if* it *would have paid* higher wages —does not describe an "obligation" at any time.

*United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71 (2d Cir. 2017) actually supports HCL's

position that Plaintiffs' failed to plead sufficiently a knowing false statement or concealment. *See, supra.*[17]

*United States v. Merck-Medco Managed Care, L.L.C.*, 336 F. Supp.2d 430 (E.D. Pa. 2004) is a pre-2009 amendment case. Plaintiffs suggest it supports their anti-textual reading of the FCA and makes "contingent" obligations actionable if they had the "predictable consequence of depriving the government of money it was owed." *Id.* at 444. It doesn't. In the case, Merck-Medco had tried to defend itself on the ground that it submitted claims to Blue Cross, not the government, and that it therefore did not owe an obligation to the government but to Blue Cross. *Id.* at 443. The district court made its statement about "predictable consequence" only in the context of rejecting the defendant's argument that it must be in direct privity with the government to owe it an obligation. *Id.* at 444.

---

[17] As regards the procedural point for which Plaintiffs cite the case, it is misplaced because, among other reasons, HCL raised in the district court the same arguments it makes now. In any event, the waived argument in *Chorches* was an affirmative defense. 865 F.3d at 80. Generally, a district court's judgment may be affirmed for any reason supported by the record. *Mandala*, 975 F.3d at 207. That includes reasons not raised in or relied on by the district court. *Id.*; *United States v. Morgan*, 380 F.3d 698, 701 n.2 (2d Cir. 2004).

*United States ex rel. Huangyan v. Nature's Farm Prods, Inc.*, 370 F. Supp.2d 993 (N.D. Cal. 2005) is a pre-2009 amendment case, whose result is easily distinguished by the fact that the import duty at issue was the "price of bringing certain products into the United States." *Id*. at 1002. The defendants brought mushrooms into the United States, and thus they owed the import duty to the government at the time of the improper conduct. *Id*. at 995, 1002.

E. <u>Conclusion regarding Plaintiffs' employment tax theory.</u>

Plaintiffs' claim is that HCL owes the government money in the form of employment taxes. The obligation to pay employment taxes is set forth in the Internal Revenue Code, which requires that such taxes be paid on wages actually paid. There is no obligation to pay employment taxes for wages not paid, and thus HCL does not have the "obligation" under the FCA on which Plaintiffs' claim depends. That is, the obligation to pay employment taxes is contingent on wages being paid, and the FCA does not cover such contingent obligations.

Moreover, even if HCL did have such an obligation to pay money to the government, it necessarily arises under the Internal Revenue Code, which is the only possible source of an obligation to pay employment

taxes. Plaintiffs' claim for such employment taxes, and their requested relief for the recovery of those taxes, however, is barred by the FCA's § 3729(d) which bars such claims.

And, even if Plaintiffs' claim did not fail for lack of an actionable "obligation to pay . . . the Government," Plaintiffs have failed to plead facts that plausibly show the alleged knowing underpayment of wages that they say triggered the (contingent) obligation to pay.

The district court's dismissal should be affirmed with regard to Plaintiffs' theory of unpaid taxes on unpaid wages.

II.  <u>Plaintiffs fail to state a claim regarding fees for visas never sought.</u>

Plaintiffs' second reverse-FCA claim theory also fails. This theory asserts that HCL may be held liable under FCA § 3729(a)(1)(G) because *if* it had applied for the type of visa Plaintiffs say *should have been* applied for, *then* it *would have been* obligated to pay the different (higher) fees associated with that type of visa to the government.

The district court correctly dismissed this claim because such a potential or contingent obligation to pay the government is not actionable. App. 21, 28. Reverse-FCA claims require an existing obligation—*i.e.*, that the money at issue have been "owed" to the

government at the time of the wrongful conduct. The district court could also have dismissed Plaintiffs' claim because the Complaint fails to allege any facts showing HCL knowingly applied for other, inappropriate visas in lieu of more expensive H-1B visas.

A.     Plaintiffs fail to show an obligation to pay the Government.

1.     The Text of the FCA requires an existing duty to pay.

To state a reverse-FCA claim Plaintiffs must show that, at the time of the alleged improper conduct, HCL had "an established duty" "to pay . . . the Government" the additional money at issue. 31 U.S.C. § 3729(a)(1)(G), (b)(3). Reverse-FCA liability thus requires that the obligation to pay to the government the money allegedly "owed" be "one existing at the time of the improper conduct." *Simparel, Inc.*, 857 F.3d at 506; *see also Ibanez,* 874 F.3d at 916; *Matheny*, 671 F.3d at 1223; *Mason*, 398 F.App'x at 235 (9th Cir. 2010). "In other words, there is no liability for obligations to pay that are merely potential or contingent." *Parker-Migliorini*, 878 F.3d at 1231.

2.   <u>The only duty to pay a visa fee is potential or contingent.</u>

The fatal flaw in Plaintiffs' theory is that it depends on a "merely potential or contingent" obligation to pay the government the money at issue.

Plaintiffs claim that HCL sometimes *should have* applied for H-1B visas when they instead applied for less expensive L-1 or B-1 visas. *See* App. 36, 37, 44-45, 51, 64, 65, 69, 72-74, 80-81. Because the government *would have* received higher fees *if* HCL had applied for H-1B visas, Plaintiffs claim the government lost money.

However, the only actual obligation to pay the fees associated with an H-1B visa arises if and when an employer actually applies for an H-1B visa. *See* 8 C.F.R. §§106.2(a)(3)(i) (setting the "Fee for filing . . . Petition for H-1B" visa form), 106.2(c)(4) (American Competitiveness and Workforce Improvement Act fee "For filing certain H-1B petitions"); and 106.2(c)(5) (Fraud detections and prevention fee "For filing certain H-1B . . . petitions").

Yet, Plaintiffs do not claim that HCL failed to pay any H-1B fees when they applied for H-1B visas. Instead, the only money that Plaintiffs claim went unpaid to the government consists of the higher fees that HCL

*would have paid* to the government *if* it had applied for visas Plaintiffs allege *should have been* applied for.

Because Plaintiffs' claim is thus based only on a potential or contingent obligation, rather than an existing obligation to pay the government the money in question, the district court correctly held Plaintiffs' claim regarding visa fees fails. "Defendant's obligation to pay the government arose only upon applying for a visa." App. 28. "Based on the facts alleged in the 4th AC, there was no obligation for defendants to pay the government for a more expensive H1-B visa because no such application was ever submitted." *Id.*

This second theory of Plaintiffs in fact depends not only on a potential or contingent obligation to pay the government, it depends on an imaginary duty to apply for a particular visa. In their taxes theory, Plaintiffs tried to stitch together a requirement to pay certain wages with the contingent duty to pay employment taxes on the allegedly underpaid wages. With their second theory, there is not even a requirement to do the thing what would have triggered an obligation to pay more to the government if it had been done.

HCL has no duty to use foreign workers. HCL certainly has no duty to use any particular foreign worker. HCL thus has no duty to apply for any visa, and no duty to apply for any particular visa. It is pure speculation to conclude that, if faced with the choice of applying for an H-1B visa or no visa for a particular worker (*e.g.*, if an L-1 visa was not available for whatever reason), HCL would apply for the H-1B visa (with its associated fee). Indeed, Plaintiffs' own allegations—about the extra cost of obtaining H-1B visas, the difficulties of securing them due to the cap and lottery process, and the wage obligations that come with them— reinforce the speculative flaw in the theory that HCL necessarily would have applied for an H-1B visa if, for whatever reasons, a less expensive visa was not available. App. 40-41, 44, 48. Similarly, the consequence of filing for an allegedly inappropriate L-1 or B-1 visa is not that HCL must, or is automatically deemed to, apply for an H-1B visa. It is that the L-1 or B-1 visa would be denied, or in extreme circumstances that HCL face a penalty under immigration laws. *See, e.g.* 18 U.S.C. § 1546.[18]

---

[18] Plaintiffs may have confused the (real) negative obligation not to falsify an L-1 visa application with an (imaginary) affirmative obligation to apply for an H-1B visa.

B.    <u>Plaintiffs fail to show knowing use of L-1/B-1 in lieu of H-1B</u>.

Even if Plaintiffs' claim could survive the fact HCL did not have the requisite "obligation," their claim would fail because they do not plead the most basic facts underlying their theory about HCL depriving the government of fees.

Plaintiffs' entire theory is that HCL denied the government H-1B application fees by applying for cheaper L-1 or B-1 visas in lieu of more expensive H-1B visas, when only the H-1B visa was appropriate. That must be Plaintiffs' theory because there is certainly no rule that requires HCL to apply for an H-1B visa when another visa is (also) appropriate.[19] Plaintiffs do make some allegations about falsification. Plaintiffs however fail to identify a single example in which HCL knowingly applied for inappropriate L-1 or B-1 visa in lieu of applying for a more expensive H-1B visa. And since a reverse-FCA claim depends on depriving the government of owed money, Plaintiffs' failure to show any lost fee is fatal to the Complaint (or it would be if the Complaint were not already dead for lack of an actionable "obligation").

---

[19] There is no reason a person qualified for an L-1 visa could not also be qualified for an H-1B visa.

If anything, Plaintiffs' allegations disprove their own theory. Plaintiffs seem to (mis)focus on whether HCL appropriately applies for L-1 visas, when the issue is whether it avoids H-1B fees. The (mis)focus may explain why Plaintiffs' allegations do not support their legal theory.

At Paragraph 95, Plaintiffs cite an Exhibit as standing for the proposition that HCL applied for L-1 visas for employees from the H-1B "rejection pool." App. 64. That may or may not show inappropriate use of L-1 visas, but it certainly does not show that HCL avoided H-1B applications (and the associated fees). It shows the opposite—*i.e.*, that HCL applied (and paid) for H-1B visas first.

Similarly, at Paragraph 99, Plaintiffs allege that HCL submitted an L-1 application for a Mr. Chennampalli, but in the same paragraph Plaintiffs' admit that HCL did so only *after* the H-1B application for him was denied. App. 66. Plaintiffs do allege irregularities surrounding both the H-1B and L-1 applications, but the example shows no knowing failure to apply for an H-1B visa or otherwise avoid paying H-1B visa fees. App. 59-60. Instead, the example of Mr. Chennampalli shows HCL tried to pay the H-1B fee and obtain an H-1B visa. The next paragraph's allegations about Mr. Krishnan reveals nothing about whether HCL also first

attempted to obtain an H-1B visa for him, as it did with Mr. Chennampalli.

As regards B-1 visas, Plaintiffs again defeat their own theory by pleading, at Paragraph 104, that "HCL would secure B-1 visas for employees whose H-1B or L-1B visa applications had been rejected and for employees who were not selected for an H-1B visa as part of the government's annual lottery process." App. 69. That may or may not allege violations of the visa laws, but it certainly does not support any claim that HCL is knowingly avoiding paying H-1B fees.

Because there is no obligation to pay fees for visas not applied for and, even if there were such an obligation, Plaintiffs have failed to show HCL ever knowingly applied for an inappropriate visa and thereby avoided applying (or paying) for an H-1B visa, the district court's dismissal order should be affirmed.

C.    Plaintiffs' argument lacks merit.

Furthermore, Plaintiffs' argument for reversal lacks merit. The argument consists largely of trying to fit the square peg of visa fees, along with some inapposite legislative history, into the round hole of

"obligation." Plaintiffs' cited cases are all inapposite, except for *Franchitti* which is simply wrong.

*Customs Fraud Investigations v. Victaulic* does, indeed, stand for the proposition that there *can be* a relationship with the government that results in a duty to pay, whether or not the amount of the obligation is fixed. *See* P. Br. 44. But the case does not create or suggest there is an obligation to apply for a particular visa, nor to pay for a visa not applied for. Instead, in *Victaulic*, the Third Circuit simply found that a customs duty on an imported good arises at the time of importation, and thus that Victaulic had an existing obligation to pay the correct duty for the mismarked goods it had already actually imported. 839 F.3d at 246; *see also Simoneaux*, 843 F.3d at 1039-40 (distinguishing *Victaulic*). "[I]f such [mismarked] goods nevertheless escape detection and are released into the United States, the ten percent ad valorem duty is deemed to 'have accrued at the time of importation' and is due and owing, without exception. This is precisely what CFI alleges Victaulic did in a systematic way for years." 839 F.3d at 254.

That cannot help Plaintiffs because the obligation to pay the government for an H-1B visa arises only upon applying for a H-1B visa.

The whole premise of Plaintiffs' theory is that HCL did not so apply. And although Plaintiffs may imagine that there is some duty to apply for an H-1B visa (or any visa), there is not.[20]

*United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189 (10th Cir. 2006) is a pre-2009 amendment case that concerns the defendant's alteration of existing export certificates to avoid the cost of obtaining replacement certificates for meat products. The case is easily distinguished by the Tenth Circuit's finding that government regulations had "required Conagra to obtain replacement certificates and pay the accompanying fee." *Id*. at 1191.

Indeed, the Tenth Circuit's own treatment of *Conagra* is telling. The *Barrick* Court explained the result in *Conagra* as being a consequence of the fact "the obligation [in] *Conagra* was automatic." 878 F.3d at 1233. Thus, the result in *Conagra* is consistent with the following general rule of reverse-FCA liability explained by the Tenth Circuit in *Barrick*: "[a]n established duty is one owed at the time the improper

---

[20] Plaintiffs may have confused the (real) negative obligation not to falsify an L-1 visa application with an (imaginary) affirmative obligation to apply for an H-1B visa.

conduct occurred, not a duty dependent on a future discretionary act." 878 F.3d at 1226. HCL, of course, had no "automatic" obligation(s) such as those in *Conagra*. If HCL cannot obtain some other visa, it is not compelled by law to apply (or pay) for an H-1B visa. Its obligation to pay thus arises only if and when it engages in its own "future discretionary act" of actually applying for such visa.

Plaintiffs' suggestion that Senate Committee Report 111-10's "endorsement" of Conagra helps them is, again, misplaced. *See* P. Br. at 50, 58-59. First, the Report's definition of "obligation" is not the one enacted. *See, supra.* Second, the citation in the Report is actually to a brief that included a citation to *Conagra*, not to the Tenth Circuit's opinion.

*Franchitti v. Cognizant*, 555 F. Supp.3d 63, is one of the two district court decisions to address the issue now before this Court (other than the district court in this case). Plaintiffs rely heavily upon the decision in their brief. P. Br. 50-56. Plaintiffs' reliance is misguided, and the district court below was correct not to follow *Franchitti*.

In *Franchitti*, the New Jersey district court explained that it wholly ignored the only other opinion to address the issue, *Lesnik v.*

*Eisenmann*, 374 F. Supp.3d 923 (N.D. Cal. 2019) "because it was decided in another circuit." *Franchitti v. Cognizant Tech. Sol.*, 2022 WL 605745, *2 (March 1, 2022) (denying motion for reconsideration).

Instead, the *Franchitti* court denied the motion to dismiss in that case, based on inapt attempted analogies to *Pemco* and *Victaulic*.

The *Franchitti* court opines, "[j]ust as the defendant in *Pemco* submitted false records to pay less than the true value of the airplane equipment, Cognizant submitted false statements about the nature of its employees work to pay lower visa application fees." 555 F. Supp.3d at 71. The obvious difference glossed over by *Franchitti* is that the *Pemco* defendant had already bought (and resold) the airplane parts at issue, and had a contract spelling out its obligation to pay the government for the parts' "full value." *Pemco*, 195 F. 3d. at 1235-1237.

The *Franchitti* court then claims, "[l]ike the marking duty in *Victaulic*, Cognizant's "obligation to pay the correct visa application fee accrued upon its submission of the visa application" and "Cognizant had an obligation to pay the appropriate fee for the privileges associated with its desired visa." 555 F.Supp.3d at 71.

An obvious difference glossed over by *Franchitti* is that whereas Victaulic had been importing mismarked goods for years, and that each such importation triggered an automatic "ten percent ad valorem duty," "due and owing, without exception," *Victaulic*, 839 F.3d at 254, there is no automatic obligation to apply (or pay) for a different visa than the one applied for. Despite the *Franchitti* court's verbiage, there is no one-size-fits-all "the visa application," and no amorphous "desired visa." An employer chooses whether and which visa(s) to apply for, and pays the fee according to its choice. If the application is rejected (or found to be false), the employer *may* apply for a different visa (or may be prosecuted for a false application). But the employer is never compelled to apply for a different visa, and it is not obligated to pay for a different visa unless and until it actually applies for one.

Like its reliance on *Franchitti*, Plaintiffs' attack on *Lesnik* is misplaced. The *Lesnik* opinion, like the issue before this Court, is straightforward. "The FCA statute defines 'obligation' as 'an established duty.'" 374 F. Supp.3d at 939. "The obligation cannot be merely a potential liability." *Id*. at 940 (internal punctuation and citation omitted). "[T]he obligation to pay the government only arises upon applying for a

visa." *Id.* "[T]here was no obligation to pay the government for a [H-1B] visa because no visa application for a [H-1B] visa was ever actually submitted." *Id.*

Plaintiffs criticize *Lesnik* on two grounds. Neither has merit. First, Plaintiffs say the holding in that case was based on "the overly restrictive and now-abrogated interpretation of 'obligation' from ATMI." P. Br. 56. But that is wrong and misleading. The *Lesnik* Court actually references *American Textile* the first time—as a "*quoted in*" cite to *United States v. Bourseau*, 531 F.3d 1159, 1169 (9th Cir. 2008)—for the proposition that "The obligation cannot be merely a potential liability." *See* 374 F. Supp.3d at 940. That is and remains an accurate description of "obligation" as currently defined, and it was as dispositive in *Lesnik* as it is here.[21] It is true that the *Lesnik* opinion goes on to cite *American Textile* for the abrogated proposition that a "fixed sum" is also required, but that is dicta in that case, and equally unnecessary here.

Plaintiffs' second reason why *Lesnik* should be ignored is that the plaintiffs' counsel in that case made "strange" concessions. *See* P. Br. 56,

---

[21] Indeed, Plaintiffs themselves seemingly endorse *Bourseau*, which they cite directly at page 26 of their brief.

58. What Plaintiffs in this case find "strange" is that counsel in *Lesnik* acknowledged the obvious: "visa fees are an *obligation* to pay *upon applying for a visa* the approximated cost to the government for visa related expenses." *Lesnik*, 374 F.Supp. at 940 (emphasis in original), (mis)quoted at P. Br. 58.

### D. Conclusion regarding Plaintiffs' visa fees theory.

Plaintiffs' claim is that HCL owes the government money in the form of H-1B visa fees. The obligation to pay such fees is set forth in the immigration regulations. The obligation however, arises only upon an actual application. There is no obligation to pay fees for visas not applied for, and thus HCL does not have the "obligation" under the FCA on which Plaintiffs' claim depends. That is, the obligation to pay H-1B visa fees is contingent on applying for an H-1B visa, and the FCA does not cover such contingent obligations. Similarly, there is no obligation to apply for an H-1B visa, even when another visa is not appropriate.

And, even if Plaintiffs' claim did not fail for lack of an actionable "obligation to pay . . . the Government," Plaintiffs have failed to plead facts that plausibly show the alleged knowing application for an

inappropriate visa in lieu of an H-1B visa. Plaintiffs' own allegations support only the opposite sequence.

The district court's dismissal should be affirmed with regard to Plaintiffs' theory of unpaid visa fees for unapplied-for visas.

## Conclusion

Plaintiffs have failed to state a claim on which relief can be granted.

HCL had no obligation to pay employment taxes on wages never paid. Even if HCL could have such an obligation to pay the government, that obligation to pay could arise only under the Internal Revenue Code. That would make Plaintiffs' claim that HCL owed money to the government one arising under the Internal Revenue Code and seeking as relief (as Plaintiffs' claim does) the recovery of taxes. Any such claim would thus be precluded by the Tax Bar. Furthermore, the Complaint also fails to plead sufficient facts to show that HCL knowingly paid its H-1B employees in violation of law, and thus failed show the factual premise of the tax-based claim.

HCL also had no obligation to pay H-1B visa fees for H-1B visas it did not apply for. Furthermore, the Complaint also fails to plead sufficient facts to show that HCL knowingly applied for inappropriate, less expensive visas in lieu of applying for H-1B visas, and thus failed show the factual premise of the fee-based claim.

The district court's order and judgment should be affirmed.

Respectfully submitted,

/s/ *David L. Schenberg*

David L. Schenberg
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
7700 Bonhomme Avenue, Ste. 650
St. Louis, MO 63105
Telephone: 314.802.3935
Facsimile: 314.802.3936
david.schenberg@ogletree.com

Attorneys for Defendants/Appellees
HCL Technologies Ltd. and HCL
America, Inc.

## <u>Certificate of Compliance</u>

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,316 words.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14 point, Century Schoolbook font.

3.     This Brief has been formatted as a .PDF using Adobe 10.0, and has been scanned and to the best of my knowledge is virus free.

/s/ <em>David L. Schenberg</em>
Attorneys for Defendants/Appellees
HCL Technologies Ltd. and HCL
America, Inc.

## Certificate of Service

I hereby certify that the foregoing document has been filed with the Clerk of the Court through the Court's CM/ECF system on this 3rd day of January, 2023, and that service of same was made via electronic delivery via the CM/ECF System to all participants.

/s/ *David L. Schenberg*
Attorneys for Defendants/Appellees
HCL Technologies Ltd. and HCL
America, Inc.